Good morning, your honors. May it please the court, my name is Andrew Beardall, and I'm one of the defendants in the case of the United States v. Renzi, Sandlin, Laquire, and Beardall. Now you may have heard some of those names before because two of those individuals have already come up to the Ninth Circuit, former Congressman Renzi on an interlocutory appeal about speech and debate, and the other defendant, Duane Laquire, whose conviction was overturned by the Ninth Circuit. I'm here appealing the denial of the Hyde Amendment claim that I made in an attempt to leverage former Congressman Renzi. I'd like to recover the $1,388,000 in change that I incurred in legal fees in defending against this unjust prosecution. Judge Goldberg Are those fees that you actually paid? Andrew Beardall They are not at this time, no. Judge Goldberg Because Mayor Brown was representing you pro bono. Andrew Beardall Mayor Brown was representing me pro bono to an extent, your honor. The expenses I am responsible for. And I'm expected to write a check for those. And I've written them little checks. But I don't have... Judge Goldberg This was all covered by Mayor Brown? Andrew Beardall No. Some of it was Mayor Brown, which had several of the attorneys, Lucius Outlaw, who left the case when he got a new job. Judge Goldberg My question goes to this, counsel. If we were to award you attorney's fees in this case, would the money go to Mayor Brown or is this money that you collect yourself? Andrew Beardall It would go to Mayor Brown and to Shulte Ross and Zabel, who is one of the other law firms who was involved in this. Lead counsel, originally worked for Mayor Brown, who moved over to a different firm. Judge Goldberg What case are you relying on where a court in a pro bono situation has granted attorney's fees? Anywhere in the nation? Andrew Beardall No, no. The Hyde Amendment follows the Equal Access to Justice Act. And there are several cases in different circuits. It is a case of first impression for the Ninth Circuit. But United States v. Claro, which was a Fifth Circuit case. Judge Goldberg Are you telling us a case now that allowed attorney's fees in a pro bono case? Andrew Beardall It did. Yes. If I may quote from it, it's a well-settled, it is well- Judge Goldberg Just give us a citation. Andrew Beardall Of course. U.S. v. Claro, 579, F. 3rd, page 452, Fifth Circuit in 2009. That is addressed in my brief. As is another appropriate case, Cornelia v. Schweiker, which is 728 F. 2nd, 978. And that specifically stated, the computation of attorney's fees should be based on prevailing market rates without reference to the fee arrangement between the attorney and the client. Now in this case, it should be decided on whether or not the government overstepped its bounds, whether they acted frivolously, vexatiously, or in bad faith. Judge Goldberg But now why should a pro bono lawyer get paid for doing his duty? Andrew Beardall Because the kindness of the law firms that assisted in my representation shouldn't be punished because they chose to act out of kindness. Judge Goldberg So it's not punishment. There's a long tradition of lawyers acting pro bono. When they don't get paid, they're not punished. That's part of their duty as lawyers. Andrew Beardall Fair enough. Judge Goldberg So why should these lawyers of all be suddenly given a windfall? Andrew Beardall These lawyers worked very hard in representing me in a case that was absolutely staggering given the charges. Judge Goldberg And they got what they hoped for.  They got what I hoped for, Your Honor. Judge Goldberg All right. Andrew Beardall And they spent an awful lot of time, effort, and their own money. And again, let me reiterate  Judge Goldberg But they were serving the community. So why should they get a windfall? Andrew Beardall Well, if this Court denies the opportunity for them to recover under something like the Hyde Amendment, it's a disincentive. Judge Goldberg Well, that's all right, but pro bono lawyers have existed for centuries without getting And you want to vary that and say, oh, no. And if the case is particularly worthwhile or difficult, you get a reward. It doesn't make any sense to me. Andrew Beardall Your Honor, what I would like to do is follow the strictures of the EHA, which in other circuits has provided that pro bono attorneys, pro bono representation, can recover for their time and effort in EHA cases. Judge Goldberg We're not dealing with the EHA.  No, we aren't, Your Honor. What we're dealing with is the Hyde Amendment, and the Hyde Amendment is supposed to parallel the AHAA exactly, except in the case of burden of proof. And the government's brief, they do try and create, carve out another exception to the AHAA, you know, in saying that the Hyde Amendment should be considered differently because of this. And I strongly disagree with that in that the government shouldn't be allowed to weaken the Hyde Amendment at all. It is one of the handful of things that is a check on the government against an unjust prosecution. And by no means should the government be allowed to water that down at all. Andrew Beardall But you're watering down a long and honorable tradition of the profession. Judge Goldberg Well, Your Honor, I respectfully disagree. What I'm trying to do is follow the precedent that has been established by the EHAA. Andrew Beardall It hasn't been established. Not in this type of case. So don't Judge Goldberg I understand, Your Honor. I apologize. It has been established in other circuits, and that is what I was modeling my approach on. And, you know, again, to reiterate, the expenses which were a substantial amount of this nearly $1.4 million, I am responsible for. They didn't choose to write those off. Some of them were both personal expenses. Some of them were expenses that were incurred by the Andrew Beardall Can you tell us how much is involved? Judge Goldberg I would have to look up the exact number, but I believe it is about $300,000, between $300,000 and $400,000, give or take. I would have to look up the exact amount. Andrew Beardall Counsel, Mr. Renzi hasn't been tried yet. Is that correct? Does he have a trial date? Judge Goldberg His trial date is, I believe, sometime in May of next year. Andrew Beardall Do any of the counts against Mr. Renzi relate to the insurance business? Judge Goldberg They do, yes. The same ones that I was found not guilty of. In addition to others, he was accused of, or he is, some of the charges are currently for embezzlement, which predated my arrival on the scene there. And there are a whole series of other insurance charges. Andrew Beardall Is there any reason why a decision in this case should be held pending his trial? Judge Goldberg Not at all, Your Honor, because the circumstances between my case and Mr. Renzi's case are very different. He is actually accused of embezzlement, and he, like I, was accused of covering it up. My case was determined by a jury that I was not guilty. And any decision that this Court makes as far as reimbursement of expenses will have no effect on Mr. Renzi. Now, the original not guilty verdict might, but that was two years ago, in 2010, when this case was decided. Andrew Beardall If Mr. Renzi were to be convicted on the cover-up question, would that have any bearing on our view of this case? Judge Goldberg I don't believe so, because one of the important issues in this case was, in the statute, it requires that an individual knowingly make false statements. The government presented next to no evidence that I knowingly made any false statements. In fact, they had about 10 seconds of testimony from an immunized witness, an immunized cooperating witness, that indicated that she had been on a phone call with me, but didn't recall my response when she said that the statements contained in these letters weren't true. However, 10 minutes later, 15 minutes later, upon cross-examination, that exact same witness said that I would never have sent out anything that contained false information, and she has no memory of Now, what I knew at the time was, has no bearing on what Mr. Renzi knew at the time. That's for another court and another jury to decide. But any decision they come to about what Mr. Renzi knew is very different than what I, as the individual representing the organization in this dispute, knew at the time. And there were two possible conduits, and one of those conduits, this immunized witness, said that she never told me that these statements were false, and that, in her opinion, I would never have sent out any documentation that contained false statements. I notice I've only got about 50 seconds left. I would like to reserve some time for rebuttal, if I could. That's fine. I do so. Okay. Thank you very much. Thank you. Mr. Smith? Good morning, Your Honors. And may it please the Court, Christopher Smith for the United States. Your Honors, the district court did not abuse its discretion when it denied Mr. Beardall's motion for a $1.4 million Hyde Amendment award. The district judge, who presided over this case from the indictment to the verdict, found that there was substantial evidence presented against the defendant, and that the government's case was not brought with ill intent or dishonest purpose. The district judge heard the evidence and was convinced then, as he is now, that the government did not prosecute a frivolous case for vindictive and vexatious reasons. These findings are backed by both the record and the law in this case. First, Mr. Beardall has not shown that the government's case was objectively baseless. Second, he cannot show any subjective malice. And third, as the Court turned to, he is not entitled to a fee award to begin with because he was represented in this case pro bono. I'll turn first to the pro bono issue in this case and Mr. Beardall's representation to the Court that these fees would go to Mayor Brown and his council is something that was certainly, I thought, was unclear from the briefing because it's a very unique situation in this case. Presumably, if we were to decide that the pro bono council was entitled to fees, that could all be worked out before a district court, couldn't it? That's not something we really need to get into. I think that our concerns would only be to make sure that we weren't treating this as sort of a tort suit against the government and that the fees were going to compensate actual fees incurred by council. Well, I think if Mr. Beardall were to pass the threshold issue here and this Court were to agree that he otherwise meets the Hyde Amendment standard, which for other reasons I can explain he doesn't, then of course the district court would go through those and awardable, but I just want to point out one special situation with this case and that's that the CJA order that was issued on May 20, 2010, allows Mayor Brown to be reimbursed for costs and expenses, but in it the district judge expressly states that Mayor Brown shall not be compensated for fees in this case. So, on one hand, if Mr. Beardall were to keep this fee award, that would be a windfall for a defendant that goes against the purpose of what the Hyde Amendment was meant to do. On the other hand, if the fees were to go to Mayor Brown, that would go against what the district court ordered in its CJA order. Presumably, it could revisit that. Or explain it. Sure, Your Honor. I think that that would be possible. However, I'd point out that the reasoning why fee awards have been allowed, at least in some circuits under the EAJA, also conflicts with the purposes of the Hyde Act. They were awarded, for example, in the Eighth Circuit's case, Cornella, and as the Fifth Circuit explained in the Claro case that Mr. Beardall cited, those awards were based on the policy objective that we should incentivize the involvement of pro bono counsel in civil cases. Now, as the Fifth Circuit explained in Claro, those policy objectives don't carry over to criminal cases because we don't, there's no need to incentivize criminal litigation and there's no worry that indigents will not be afforded counsel in criminal cases because, of course, the policy objectives don't carry over and, of course, when this is an abrogation of the American rule and sovereign immunity, it's a statute that we want to strictly construe. But the court need not even reach this issue if it determines that Mr. Beardall otherwise would not be entitled Hyde Amendment fees. And I want to focus briefly on both the Before you sit down, you might also comment on the two citations he's given me, these cases that he's said, all fours with this case. Well, I don't, as far as, Your Honor, I recall that Mr. Beardall cited the Claro case in the Fifth Circuit, which is a case under the EAJA where it explained the policy rationales for awarding pro bono fees in that case. And in that case, it discussed this Eighth Circuit case in Cornella, which I believe was the other one Mr. Beardall cited, which again was for policy reasons awarding pro bono fees in an EAJA case. And I think for the reasons I stated, those policy reasons don't carry over to a Hyde Amendment case. But to focus in on the objective component of Hyde Amendment awards, and that's to meet the Hyde Amendment standard for frivolousness or vexatiousness, Mr. Beardall needed to show that the prosecution was objectively without any merit, and he couldn't do that. As an initial matter, the court allowed the bulk of the government's case to go to the jury, and this fact alone demonstrates that the government's case was not without merit. In this court's case in Manchester Farming, for example, I think is instructive. There this court held that the government's case having sufficient merit to go to the jury itself supported a conclusion that the case was not objectively baseless. It was looking at it under the vexatiousness prong here. And Mr. Beardall can't get over this hurdle, but even if he could, I think it's important to look at the evidence that was actually presented at trial that underscores the fact that the government's case did have merit to it. And that's that it's undisputed that at least two letters that Mr. Beardall sent as president and general counsel of an insurance company contained false statements to insurance regulators. And the government also had evidence that Mr. Beardall knew these statements were false. In addition to circumstantial evidence, one witness testified at trial that she, uh, told Mr. Beardall that in essence these statements were false. For these reasons, I think that Mr. Beardall cannot meet the objective component of the Hyde Amendment award standard. Likewise, to meet the Hyde Amendment standard for vexatiousness or bad faith, Mr. Beardall needed to show that the government acted maliciously or with a dishonest purpose. He cannot meet this burden either because there's simply nothing in the record that would lead to this conclusion. The district court, who was best in the position to analyze this, saw no evidence of bad intent and indeed at the end of the case congratulated both sides for, quote, really good lawyering. And Mr. Beardall's counsel himself at trial specifically declined to accuse the government of acting with any ill intent. With regard to some of the instances Mr. Beardall raises in his briefs now, for example, with regard to the FBI report on one of the prosecution's witnesses that was disclosed during the trial, Mr. Beardall's counsel expressly told the court on the record that he had no doubt that the government was acting in good faith. Now, he actually used the words good faith at that point and that had the government, had the prosecutors been aware of the existence of the report that they would have produced it. Likewise, with regard to severance, although the overlap between the two joint cases certainly was not as great as Mr. Beardall's counsel perhaps expected, he stated that, quote, the government has done a terrific job of trying to focus the jury in on different trials against the separate defendants. So I think when in this case where you have the district judge who was presided over this case from beginning to end, who saw no evidence of bad faith, to the contrary, and Mr. Beardall's own counsel who was with this case from beginning to the point that he withdrew before the Hyde Amendment papers were filed, had statements on the record that indicated that there were no evidence of bad faith in his opinion as well. And for these reasons, Your Honor, we don't believe that Mr. Beardall meets the threshold standard in that Hyde Amendment fees are meant to, as this court said in footnote 10 in its Brownstein opinion, the purpose of the Hyde Amendment is to ensure that defendants aren't driven into bankruptcy for fees that they incurred. Here, Mr. Beardall incurred, did not incur these fees when he was represented pro bono. Therefore, he does not, he is not eligible for Hyde Amendment fees to begin with. But even if he were, he does not meet the standard for showing bad faith, frivolousness, or vexatiousness. And we would respectfully ask that this court affirm the decision of the district court. Thank you, Your Honors. Thank you. Mr. Beardall, you have some time. Thank you, Your Honor. We spent an awful lot of time on the pro bono issue, so I didn't get to hit some of the substantive issues, but I'd like to follow up on what he said about bad faith. The government interviewed one of the witnesses, the FBI interviewed one of the witnesses on a separate case where that witness was stealing from a congressional candidate. That report was in the FBI's computers for six months before my trial, and they didn't turn it over. Now, while my counsel might have said he thought it was in good faith, that's irrelevant in that they are required by a Ninth Circuit case, Ninth Circuit precedent in U.S. v. Wood, that says the left hand of the government can't say they don't know what the right hand of the government is doing. Was the report turned over to you? It was turned over the day after testimony, which robbed us of the opportunity to explore was there some quid pro quo here? Did this fellow testify? Could the witness have been recalled? The witness was not recalled. Could the witness have been recalled? I do not know the answer to that, Your Honor. Our Brady jurisprudence, we hold the government to a pretty high standard there, but we don't hold it to an impossible standard, and sometimes even when there's late-breaking developments and things are at least disclosed mid-trial, unless there's evidence of bad faith on the part of the government, we don't deem that to be a Brady violation, even if we think that it might have been turned over earlier. Well, Your Honor, under Wood, it specifically states that the government cannot claim ignorance if another branch of the government knew it. Right, which is why it has an obligation to turn it over to you. But unless there's some kind of a finding of bad faith, we deem that the government has satisfied its obligations under Brady v. Maryland if the government turns it over at some point to give you an opportunity. And if it's turned over mid-trial, that may be later than is convenient, may be later than was proper, but it itself is not evidence of bad faith on the part of the government. Well, it was after the witness had already testified. And but for the defense's resourcefulness in finding out this information, that witness's testimony would have stood. And that witness's testimony was very damaging. It, you know, alleged all sorts of facts that were not true. And it turns out, well, he was a liar and a thief the whole time. And but for our resourcefulness… Did you have any evidence that the prosecutors knew of this report beforehand? That the prosecutors directly? No. No. However, there was a member of the FBI as part of the prosecution team. And this was, this was conducted, the, the investigation into that witness was conducted by the Arizona FBI. And it was an Arizona FBI member who was on the prosecution team. Now, is it possible that they… And did that member of the prosecution team interview this witness? He did not. You know, the government's a big, the big, the government's a big organization. And I'm, I'm not trying to justify the government's lateness in turning this, in turning this over to you. But the situation that you've just described is not that unusual in our experience. We, we usually see this in the context of a, of a Brady violation. And we don't see it in the context of, of course, of a Hyde Amendment question. But we see it in, in the terms of, of Brady. And if you, if the, if the, if the prosecutor, you don't have any evidence that the prosecutors knew of this, it's very difficult to make out a case that they brought this for vexatious purposes or they brought this with evil intent. Well, that, that was simply one tree in the forest of the many things that the government did. Now, while I, I do disagree with Your Honor that, you know, they did have the obligation to turn it over and they had the obligation under Wood to turn it over with enough advance notice for us to do something about it. Well, this is a very complex case. There were a thousand docket entries in this case. No, the problem is, if it had been as critical as you are now arguing, all you had to do was recall the witness, isn't it? On this record. Is there anything here that said you couldn't recall the witness? I, I, I do not recall that, Your Honor. I, I don't know the answer to that. That would be something that was argued between my counsel and the judge. It would also be something, if it was on the record, that you would know when you were coming to argue that case, this case this morning, as important as this case is to you. Fair enough, Your Honor. We, we did. I'm not suggesting that it's there. In the defense case, we did call the, the political candidate who did proceed to rip this witness apart, as, as was due. But there were many other instances that could be considered frivolous, vexatious, or in bad faith, detailed in my brief. And I've, I've gone over my time, though I'd certainly love to, to speak more. I think we understand, I think we understand your position, counsel. We certainly are sympathetic to, to, to the position that you find yourself in with respect to having been put to the trouble here and having been acquitted by the, by counsel. The, the, the fact of acquittal, of course, is not, is not the equivalent of, of vexatious litigation by the government. Although, from your perspective and the chair that you sat in during that trial, I'm sure that you felt that way. If I may, Your Honor, just one, one final thought. I was accused of making two false statements to insurance investigators. In real life, that would likely have been considered by an administrative law judge. I could have, had I been guilty, I could have potentially lost my insurance license and paid a fine. Instead, I was subjected to what is now coming up on five years, a three-week trial, $1.4 million in incurred legal fees because a congressman was involved. That disparity alone says there's something not quite right about this prosecution. You saw it when counsel argued exactly what I said. He would argue he's trying to carve out another exception for the Hyde Amendment from the EAJA, and that's never been done in any circuit. The only exception has been the frivolous, vexatious, and bad faith. In the case of the judge who oversaw this whole thing, well, he's already made one big mistake. He let Duane LaQuire, my co-defendant, go through trial, and he was found guilty. And by the time that got up here to the Ninth Circuit, the Ninth Circuit said there was no basis in law at all for that guilty finding. And it remanded with orders to exonerate Mr. LaQuire. That judge may have missed the forest for the trees in this case. Mr. LaQuire and myself got caught up in the wake of this obsession to get Congressman Renzi. And when you have an attorney who's trying to do his job, which is what I was doing, wrongfully accused by the government, and when there are examples of them trying to bend the rules, trying to break the rules, trying to break privilege, trying to charge me on something that had no factual basis, all of which is detailed in the brief, I think they were acting frivolously. They were acting vexatiously. They were acting in bad faith. And I've given at least seven examples. In my brief, you only need one under high amendment precedent. I think we're well aware of what you've argued in your brief, Counsel. All right. Well, thank you very much for your time, Your Honors. I appreciate it. We thank Counsel for the argument. The case of United States v. Beardall is submitted on the briefs, and the court stands in recess until tomorrow morning. All rise. I think my brother misspoke. He didn't mean it submitted on the briefs. We've just heard your argument, so submitted, I think.
judges: Farris, Noonan, Bybee